20-1804. We'll hear from counsel. Mr. Robin. May it please the court. My name is Jonathan Robin and thank you. I represent U.S. Bank National Association. The law in New York is clear. A lender may revoke its acceleration at any point within six years from acceleration in a mortgage foreclosure action. All that is needed is clear, affirmative act of revocation. In this case, a notice of revocation sent within six years is that clear, affirmative act. On February 18th, 2021, as this court is well aware, the New York Court of Appeals issued its decision in Freedom Mortgage Corporation v. Engel 2021, New York, Lexus 103, which reinforcing that the ability to revoke is absolute and can only be denied when a borrower has changed its position in prejudice to that borrower. In Engel, the Court of Appeals made clear that the intent of the parties or the timing of the revocation had zero relationship to whether the notice acted as a revocation or acceleration. And that documents beyond that notice of revocation are not only not necessary, but not appropriate to be considered by the court. Here, the undisputed facts are very simple. On January 5th, 2006, borrower obtained a loan in the principal amount of $428,000. At some point before June 30th, 2008, borrower breached her payment obligations by failing to make her monthly payment. Let me interrupt you for a second to ask for clarification. You say that documents beyond the revocation are not appropriate to be considered. Well, I mean, one of the qualifications, one of the necessary standards is that the revocation be clear. So I don't understand why are other documents, if the other documents make less clear whether the acceleration has been revoked, why are they not appropriate to be considered? If two documents are sent more or less simultaneously and one of them seems to be a revocation of the acceleration and one of them seems to be a continuation of the acceleration, wouldn't that render, considering them together, wouldn't that render it less clear? I just don't understand why you say that documents other than the one that expresses revocation are not to be considered. Well, in Angle, the court found that it needed to set a bright line rule and that the bright line rule was best enunciated by saying that the notice of revocation, in that case, it was the stipulation of discontinuance or the notice of discontinuance. But the notice of revocation is the operative document and that to start looking at the intent or the motive of the parties beyond that notice will create an uncertainty for both the borrower and the lender. So you're saying it's inappropriate to look at the motive for the revocation of the acceleration, but that's different from saying it's inappropriate to look at documents other than the document identified as the one that effectuates the revocation. That's your language, not the language of the Court of Appeals. Yeah, correct. Did the Court of Appeals say you can't look at other documents? Well, the Court of Appeals did say that you should not look at documents beyond, in that case, it was the notice of discontinuance. So, yes, the Court of Appeals did say you should not look at that. Once that notice has been sent, if it is clear, if it is a clear revocation, then documents that were subsequently sent would have to either, A, reaccelerate or change it. Again, this goes back to the question of motive and what you were saying was, well, what if there's a document that was sent after that might show something different? That, again, goes to the motive. If the notice of revocation is clear, as it was in this case, but the maturity of the loan is hereby deaccelerated, then documents sent afterwards should not be reviewed. Let me just ask you something else out of curiosity, which has nothing to do with this case. But just from my understanding of the doctrine established by this decision of the New York Court of Appeals, what's the pertinence of six years? Why does six years matter? I was a little puzzled as to why this proposition of the New York Court of Appeals should only be good for six years. Why shouldn't a notice of deacceleration after six years be in the same category? Why is that different? Because in a mortgage foreclosure action in New York, you have six years from the default to bring an action. Now, once the action is accelerated, then that would start the running of the statute of limitations for the entire mortgage, the amounts owed under the entire mortgage and not the single installment. So normally, if you fail on day one to make your monthly mortgage payment, you have six years to bring an action from that individual monthly mortgage payment. Same with the next year, six years from that date. But once it's accelerated, it's six years. So the notice of revocation has to be brought within six years to deaccelerate the mortgage and go back to the monthly installment payments, which is important because here the language, the clear language in our notice of revocation says that the loan is reinstituted as an installment loan. Which puts the borrower on notice that, again, we are no longer seeking a full six years of the full accelerated amount. We are only seeking the individual monthly installment amount at this point. It's important. So does that mean that the lender could send a notice deaccelerating because they weren't ready to move forward before the six years expired? And then that stops the clock. And then the next day, restart it by saying, actually, the whole thing is due. Yeah. So basically, they can evade the statute of limitations. That's your interpretation. It is not an evading of the statute of limitations. And Angle specifically said that it is not an evading of the statute of limitations. The whole point of this, it's a hypothetical. If that is what's going on is, I guess, my question. Yes. Yes. Their motive could be 100% to evade the statute of limitations. Excuse me. One minute left. Sorry. Okay. And under Angle, that will be sufficient to still restart the statute of limitations. In this case, there's no dispute as to the timing of the revocation letter. There's no dispute that follower received revocation letter. And at the very least, the existence of the undisputed timely deacceleration letter, together with subsequent mailings that we have here that actually further strengthen, and that's in our brief, the 30-day and 90-day notice, and the monthly mortgage statement, at least creates an issue of fact that would defeat Apelli's motion for summary judgment. The only reason that the lower court found that this case was barred was because it was the motive of, they said it was the motive and the timing of U.S. Bank to try to evade the statute of limitations, which has been specifically overturned by Angle. I reserve the remainder of my time. That overturning was subsequent to the district court's decision. Is that correct? That's correct. It was subsequent to the district court's decision and subsequent to our initial brief, but before our reply. Thank you very much. We'll hear from attorney Danielle Light. Good afternoon, your honors. May it please the court. My name is Danielle Light, and I'm counsel for the plaintiff respondent, 53rd Street, LLC. The following three facts are not in dispute. Acceleration of Apelli's mortgage occurred in June 2008 with the commencement of the foreclosure action. The 2008 action was dismissed in 2013 for Apelli's failure to appear in court, and about five years later, respondent became the title owner of the subject property. The lower court issued its decision in this matter under the prior standard concerning revocation of acceleration. Since that decision, as we just discussed and we just heard, the court of appeals issued its decision in Freedom Mortgage v. Angle, which clarified the standard on when a revocation is found. The lower court's determination that the loan is time barred was correct both under the prior standard and remains correct under the standard set forth in Angle. Therefore, the sole question before this court is whether the June 2008 acceleration of the loan by commencement of the foreclosure action was revoked within New York's six-year statute of limitations. If there was no revocation, then respondent is entitled to a discharge of appellant's mortgage pursuant to New York's real property actions and proceedings law, 15014, since a new foreclosure action is time barred. I'm going to start with my strongest point, which addresses the main issue in this case. Appellant's attempt at revoking the acceleration was legally insufficient because it was done after the foreclosure action was dismissed. Since this is a new legal argument that was not available until after Freedom Mortgage v. Angle, this court can hear the argument now under Reedco, Inc. versus Marine Midlands Bank, 81F3D295, which was a Second Circuit decision from 1996. In Freedom Mortgage v. Angle, New York Court of Appeals held that a revocation must be the, quote, functional equivalent, end quote, of the acceleration. The Court of Appeals held that to deaccelerate an acceleration that occurred by commencement, the foreclosing plaintiff must voluntarily discontinue within the six-year statute of limitations. The Court of Appeals stated that a voluntary discontinuance is the functional equivalent of filing a foreclosure complaint with the court. Similarly, the functional equivalent of an acceleration by letter would be a revocation by letter. The Court of Appeals in Angle also held that it would be, quote, analytically unsound as a matter of contract law and unworkable from a practical standpoint to examine post-discontinuance acts to determine whether an act constituted a revocation of a prior acceleration. Therefore, it would be analytically unsound and unworkable for this court or any district court to examine post-dismissal acts to determine whether there was a revocation because the question becomes, where do we draw the line? If we consider the revocation letters, do we consider the other correspondence as well? This is exactly what the Court of Appeals was trying to avoid. Judges using their discretion to analyze the facts to come up with decisions that are inconsistent with other courts. The Court of Appeals wanted a plaque. This is Judge Park. Could I ask you, I mean, that seems like sort of a narrow interpretation of Angle based on its facts. It seems the broader proposition was that a noteholder can deaccelerate by an affirmative act that gives notice to the debtor. And in that situation, voluntarily discontinuance counted as such an affirmative act. But it didn't say that that was the only way to deaccelerate, did it? Because that wouldn't even make sense here. Well, so what it said was, I think the key phrase is, quote, functional equivalence. There has to be a functional equivalence. And so what that means is if there's what the court said was if there is an acceleration by commencement, then the equivalent of commencement, which is filing a complaint with the county clerk, would be to file either a stipulation of discontinuance or a motion to discontinue. The equivalent is there you're filing a case with the court and you're dismissing, you're voluntarily dismissing the case with the court, which is not what happened here. What happened here was there was an acceleration by commencement when they filed their complaint with the county clerk. And then there was a dismissal for failure to appear in court, which Angle says very clearly, a dismissal by a court that's involuntary is not a revocation. And then about a year later, they sent, allegedly, the law firm that represented U.S. Bank, sent a letter claiming to revoke the acceleration. I guess that's an application of the broader proposition that it seems Angle stands for, which is that all you need is an affirmative act of deacceleration that provides notice. I actually believe that it's more narrowly tailored. I think because I reviewed the 28 cases that followed Angle and those decisions, every single one of them dealt with an acceleration by commencement and a voluntary discontinuance. So I do believe that Angle was very narrowly tailored. That doesn't mean that down the line, the Court of Appeals won't come back, for example, with a case like this, where you have apples and oranges, a case where you have an acceleration by commencement and an attempt at revocation by letter. But I don't think that's what they intended. And the reason why is because the court makes very clear that their rationale in Angle was to give a point of finality to the defendants in the case. They wanted the lawyers to be able to guide their clients and let them know, the defendants, and let them know, yes, continue to make payments or don't continue to make payments, depending on what the scenario is. So under your – if I can interrupt, Judge LaFave, as I understand the consequences of the argument you're making, if the action that was begun under the acceleration or which constituted the acceleration has been dismissed by a court for some curable reason, some technicality that's altogether curable, it would be impossible under your analysis for the mortgagee to decelerate because it no longer has the possibility of voluntarily discontinuing the action it had voluntarily begun. It therefore cannot – there's nothing it can do under your analysis, if I'm understanding it correctly. There's nothing it could do to decelerate that loan. So I don't believe that that's the analysis because in this situation – So the law requires under Angle and all of the cases that came before it that the revocation be completed within the statute of limitations, which means that if the cases within the timeframe that a voluntary discontinuance would be allowed, and let's say it's dismissed, they still have enough time to restart. Here they had about a year to refile their complaint, and they didn't do it. And that's why on June 30, 2014, and I think they also sent one a week before on June 24, 2014, they sent the revocation letter. They had a year to restart. So that's not exactly the case that it would be a point of finality and they wouldn't be able to restart. They just have to get their papers in order and move forward within a timely manner, which is the whole reason and the rationale why the legislator created statutes of limitations in the first place. They don't want defendants having to look behind, you know, over their shoulder. Well, what would the mortgagee do if the mortgagee wanted to decelerate? And in the meantime, for some trivial and easily curable reason, the court had dismissed the foreclosure action. What would the mortgagee have to do to decelerate under your analysis? Would it have to reinstitute the action and then dismiss it? There's no need to revoke the acceleration unless they're trying to extend the six years, another six years, because in this case, for example, they had a year to restart. So they would have been within the six-year statute of limitations to still foreclose on the entire debt. It's possible that maybe, you know, as Mr. Robin gave the example, on day one, if there's a default, then maybe that installment might be time barred because it's more than six years from the date of the new foreclosure. But that would be a payment. That wouldn't be the entire mortgage debt. But you're going back to the motive. You're going back to the motive, which the Court of Appeals says is irrelevant. You're saying if their motive... No, I'm sorry, Your Honor. I'm not going to the motive at all. I'm actually completely opposed to going to the motive because under Engle it says you cannot look to it. Okay, thank you. It would be a clear act, you know, this court would have to affirm the district court. But regardless, this court should affirm because the functional equivalent was not met. And so without a functional equivalent, the revocation letter could not be considered. And I think it was you that also said before, well, why can't we consider other documents? And I say the same thing now. If we're going to consider the revocation letter, which was sent after the dismissal, then why aren't we reconsidering the 90-day notice that was sent less than two weeks after the revocation, showing a clear intent to restart? And that's exactly what the Court of Appeals wanted to avoid, an analysis into intent. And so it's a very... I think Engle was a very narrow decision. And I think it clearly states that in order to revoke, you must have the functional equivalent. And for the remaining points, I'll rest on my brief. Thank you. Thank you, Ms. White. Ms. White, perhaps I could just ask you a question that I... This is Judge Cabranes, which I intend to ask Mr. Robin as well. Is there any merit here in considering the certification of these questions to the New York Court of Appeals? In this case, I think it might be just because it is different than Engle in that you have a situation where you have acceleration with commencement and an attempt at revocation through letter, which is not what they showed in Engle. So you think it might be useful? Yes, because I'm sure there are other scenarios where the same facts exist. And the closest decision that I found was the one that I cited, too, in my brief. It was the 1081 Stanley Avenue LLC versus Bank of New York Mellon, which is a 2020 Second Department case. In that case, it was also a title owner that filed the quiet title action under RPAPL 15014. They also challenged the revocation letter, but it was affirmed for different reasons. The court said there that they couldn't prove mailing of the revocation. And so the appellate division said that they were entitled to a discharge of the mortgage. But it's the only other case that I found, at least on Westlaw, that said anything about similar facts. You know, I tend to think that certification can be unduly burdensome to the parties who've managed to get to the Second Circuit with a significant case. So I'm wondering whether in this particular instance, I take it your view is that it would not be unduly burdensome to you and your client. That's right, Your Honor. Okay, fine. Then let's go to Mr. Robin and ask. If I may, I'd like to begin by asking him the same question. Yes, Your Honor. And my response is completely the opposite. One, I do think it would be very burdensome on us. And two, and more importantly, I think Engel is very clear that it 100% applies in this situation. A clear reading of Engel even says, they say it's an option. It's a single option is a discontinuance. In fact, Engel talks about other ways in which an acceleration can be deaccelerated. It talks about statements in a forbearance agreement. As Judge Park pointed, or Judge Lavella pointed out, what appellee seeks here makes no sense. Once the action is dismissed, we can't go back in and then voluntarily discontinue it. The action was dismissed, and instead of starting a new action, as appellee's counsel said, you could choose to refile. Instead, we chose to revoke, which is allowed under Engel and the New York law. And that court of appeals, the second department, excuse me, in the HSBC Bank v. Michael case that I cited in my reply, 21, New York App Division, Lexus 1068, came out shortly after Engel. Looked at that exact issue and said, notice of revocation after dismissal is allowed. So to say that just because Engel dealt with a stipulation of discontinuance, that that is the only option, if the court of appeals had wanted to make that the only option, it would have said so. It wrote a very detailed, very pointed opinion on an issue that multiple people, including myself, filed amicus briefs on. And it chose not to make it a narrow interpretation, as appellee seeks, but to make it a broad interpretation and to say that so long as you have time within six years – so long as within six years from acceleration, you do an affirmative act. And that affirmative act is clear that a notice of revocation, a stipulation of discontinuance, a statement in a forbearance would equate to a revocation and restart and redo the acceleration. So tell me in non-theoretical terms, I guess I would say, tell me exactly what you want us to do. I gather you want us to reverse the order entered by the district court in its entirety. Is that right? That's correct. I think the order should be reversed in its entirety, and summary judgment should be granted as to us. But at the very least, you should reverse it and say that there's an issue of fact – at least, at the very least, there's an issue of fact that needs to proceed. Excuse me, you have one minute left. So let me ask you further. As counsel for the bank, what exactly would happen on remand? What is your preferred scenario? In my preferred scenario, the – we would – summary judgment would be granted, and we would be allowed to proceed with our foreclosure action against the borrower or – and I guess now an appellee as we are the senior mortgage on the property. Okay. Well, go on. Why don't you – Did you move for summary judgment in the district court? Yes, we moved for summary judgment, and they cross – and there was a – and they cross-moved for summary judgment, and the court denied our motion for summary judgment and granted their motion for summary judgment. So on – a complete reversal would be that their summary judgment is denied and ours is granted. And the other option that you were suggesting before? And the other option that would be that there's an issue of fact that needs to be determined by the court, and therefore, both summary judgments are denied, although, again, I think based on the angle of decision, that no longer is the case. There is no issue of fact. There was – as counsel just admitted, that there was a revocation sent within six years. If that revocation was sent within six years and it was clear and – it was clear, then under angle, we have to be entitled to summary judgment. So the district court has not yet ruled on the question whether the notice of revocation was clear. Is that correct? The district court did not rule on – the district court ruled that because of – it was our motive and it was sent within a shorter period of – you know, right at – I think shortly before the statute of limitations, that it was not a – that it was not a – that – right. Well, we – because it was – that was – that was briefed below, and we showed the district court, and the district court didn't say anything on it, but we demonstrated to the district court that no different than Malone or any of the other cases that have looked at language almost identical to ours as notice of revocation, all have found that that is sufficiently clear to establish that there is no issue of fact. A revocation. May I ask you – may I ask you to comment on the question I asked your adversary? The question I asked was that if a mortgagee wants to decelerate, but in the meantime, its foreclosure action has been dismissed for some reason that can be easily overcome on a refiling, the – with the action already dismissed by the court, on the theory argued by your adversary, I asked, isn't it true that there's nothing the – nothing the mortgagee can do to decelerate because it no longer has the option to voluntarily dismiss the action which the court has itself already dismissed? Can you comment on that issue? I completely agree with you. What you're – what you're saying is exactly what Engel was trying to avoid, which is why – now we would have to refile a new foreclosure action against someone? What if we were in settlement negotiations with them? What if they – what if they – you know, what if COVID hits and they can't make payments? In other words, to decelerate, to decelerate, you would need to file a new action of foreclosure and then voluntarily, immediately dismiss it. Correct. Voluntarily discontinue it, which would be – although theoretically, I think, Apelli would then argue, well, the – still – was still the original acceleration, and that was never dismissed. I think the only way is to send a notice of revocation, which is allowed under the contract, and the contract is, again, remember, not between us and Apelli. It's between us and the borrower. Apelli has no standing. We didn't get into that in the argument today, but it's in the briefing. Apelli has no standing to contest the notice of revocation. Any other questions? And that – and why is that? Why is – why does – why does 53rd Street LLC lack standing to challenge the notice? Because they are not a party to the action – a party to the contract. Excuse me. They are a third party, and they have – and as a result, all of the cases have said that contractual issues and contractual notices are between the lender and the borrower. Here, the borrower does not contest the contractual revocation that was sent to them. The only party that contests it is third-party Apelli. I take it it's your view that being the title owner of the property isn't enough to confer standing. Is that it? Correct. And again, it's a different – it's a different argument. We're not – I'm not talking standing to bring the action. I'm talking standing – they obviously – it's standing to contest the revocation. Okay. That sounds like a pretty ambitious argument to me. They would be directly adversely affected, would they not? No. Why? I don't – I don't – I don't see how – I mean, I don't see how they'd be directly adversely affected. There's a contractual relationship between us and a borrower. We timely provided notice to the borrower, and now a third party is saying, oh, you can't provide that notice? How would that be any – if this was not an mortgage foreclosure? Well, their argument is that they were victimized by, just as Judge Park was saying earlier, by a contrivance to extend the statute of limitations. They weren't the party owner. They weren't the party owner at the time of the contractual notice. They became the party owner after that. So that wouldn't have affected them at that time. Appellee is merely an enterprising party that is simply trying to gain a windfall in this situation. So did you move to dismiss this case for lack of jurisdiction under Article III? It's not – I don't believe it would be – again, I am not saying that this is an Article III argument. What I'm saying is – Well, you are saying – you are saying that – you are saying that they have no standing to raise the issue, which is an Article III question. We did not move under Article III. Well, you are asking us to vacate the judgment, remand for further proceedings on the theory that we are applying a somewhat expansive view of Engel – that is, of Engel's concept of an affirmative act. Is that right? I'm asking you – I wouldn't say it's an expansive view of Engel. I would say it's Engel. I would say I simply – you simply need to apply a reading of Engel to me. Any reading of Engel, no matter how you read it, ultimately, this case goes – we are successful on this case, whether it's with – at the Second Circuit or upon remand, Engel establishes that we have sufficiently revoked and timely revoked. Okay, Mr. Robbins. Thank you very much. Judge Park or Judge LaValle, any further questions for Mr. Robbins? No, not for me. No, thank you. Okay. Thank you. Thank you, Your Honors. We thank both counsel very much for a well-argued case, and we will reserve decision.